# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **JAMAL KIANO ANTHONY BOYD** | § | |
| | § | |
| **V.** | § | **A-16-CA-1081-SS** |
| | § | |
| **LORIE DAVIS** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE SAM SPARKS
          UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates.

Petitioner, proceeding pro se, was granted leave to proceed *in forma pauperis*. Before the Court are Petitioner's Application for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Docket Entry "DE" 1), Respondent's Answer (DE 7), and Petitioner's Reply (DE 9). For the reasons set forth below, the undersigned recommends that Petitioner's Application be **denied**.

## BACKGROUND

Respondent has custody of Petitioner pursuant to a judgment and sentence imposed by the 403rd District Court of Travis County, Texas. Petitioner pleaded guilty to aggravated assault and unlawful possession of a firearm by a felon, and was sentenced to respective concurrent terms of two and ten years' imprisonment. Petitioner alleges his guilty pleas were not knowing and voluntary, that he was denied his right to due process of law and a fair trial, and that he was denied his right to the effective assistance of trial counsel.

## STATEMENT OF THE CASE

**A.      Factual Background**

The following facts are taken from an affidavit for the arrest and detention of Petitioner submitted by an Austin Police Officer on June 27, 2015.

> . . . I was flagged down [by] Matthew Gaskamp. Matthew was pointing towards a black male wearing a white t-shirt who was running EB on 6th [S]treet. Matthew was yelling "he has a gun" as he approached me.
>
> I chased the male who was later identified as Jamal Boyd. Jamal turned SB on Neches Street and then proceeded into the South alley at the 400 block of 6th Street. Jamal was apprehended in this same alley. Jamal was detained and it was later relayed to me that Jamal was involved in an altercation with Matthew at a bar called Moose [K]nuckle . . . Matthew explained that he is the general manager . . . and was working the door as a doorman, when Jamal approached the bar and walked into the bar . . .. Matthew observed Jamal to be in violation of the "dress code" and asked Jamal to leave. Jamal got argumentative and was later forced out of the bar. As Jamal was standing in front of the bar, he began cursing at Matthew and refused to leave the area. Matthew stated that Jamal then continued to face his direction and used his right hand to lift the front of his shirt. As Jamal did so, Matthew observed a "black and white" pistol in the front of Jamal's waistband. Jamal then placed his left hand on the grip of the pistol and pulled it out of his waistband, drawing it upwards, but still keeping it near his abdomen. Jamal then told Matthew "I'll fucking kill you". Matthew states Jamal repeated this statement a total of 3 times. Matthew states Jamal never pointed the pistol at him, but after his statements and actions, he believed Jamal was going to "use it and shoot me" and he was fearful for his life.
>
> Matthew explains that he begins to take a few steps towards Jamal, at which time Jamal turns away and runs WB on the 400 block of 6th [S]treet. . . .
>
> Due to Jamal exhibiting the pistol during this assault by threat and the pistol being loaded with a live round, Jamal was charged with aggravated assault in addition to Possession of a Firearm by Felon, Evading and POCS Pills.

(DE 8-4 at 6).

The affidavit for a warrant of arrest and detention with regard to the charge of possession of a firearm by a felon, alleges that the Austin Police Officer

2

began to pursue Boyd on foot south on Neches . . . I continued running after Boyd and giving him verbal commands to "STOP". . . . he finally complied with my commands. Boyd was ordered to the ground and taken into custody without further incident.

Boyd was informed that he was being stopped because it was reported he had a firearm in his possession. Boyd stated that he had thrown the gun during the course of the foot pursuit. When I briefly lost sight of Boyd, he had thrown the gun under a dumpster located on the south curb line of the alley. Boyd directed us to dumpster DE704424. Under the dumpster was a silver Taurus semi-automatic handgun (.40 caliber). Boyd indicated that was the gun he had on his person during the foot pursuit.

(DE 8-8 at 5).

## B.    Petitioner's State Court Proceedings

Petitioner was charged with aggravated assault with a deadly weapon and unlawful possession of a firearm by a felon, both enhanced by prior felony convictions for theft in 2012, and burglary of a habitation and unauthorized use of a motor vehicle in 2010. (DE 8-4 at 7-8; DE 8-8 at 6). Petitioner was appointed counsel to represent him in his criminal proceedings. (DE 8-4 at 9). Petitioner testified in his own defense. (DE 8-4 at 27, 34). After the jury had retired to consider a verdict, Petitioner decided to plead guilty to both charges. (DE 8-4 at 47). In return for his guilty pleas, the State agreed to waive the enhancements alleged in the indictments. (DE 8-4 at 15). The potential sentence in the plea agreement for the crime of aggravated assault, as a second-degree felony, was not less than two years and not more than twenty years' imprisonment. *Id.* With regard to the charge of being a felon in possession of a firearm, a third-degree felony, the written plea agreement stated that Petitioner would be sentenced to not more than ten years and not less than two years' imprisonment. (DE 8-8 at 21).

In both written plea agreements Petitioner averred he was aware of the consequences of the plea, and that he was knowingly waiving his right to a trial by jury, his right to confront and cross-

examine witnesses, his right to subpoena witnesses, and his right to an appeal of his conviction and sentence. (DE 8-4 at 17 & DE 8-8 at 23). Petitioner further averred that he was consenting to the introduction of evidence sufficient to establish his guilt. *Id.* Petitioner further admitted and confessed that he had committed the charged offenses as alleged in the indictments. *Id.* The plea agreements signed by Petitioner each stated:

> I voluntarily enter my plea of GUILTY to the above mentioned offense. I am pleading guilty (or *nolo contendere*) because I am guilty and for no other reason. My plea is entered freely and voluntarily, and without any coercion, duress or promise of benefit other than that stated in the plea bargain agreement. . . .

> . . . I have read this entire document and discussed it fully with my attorney. I understand this document completely, including the Court's admonishments, and I am aware of the consequences of my plea. My attorney has discussed with me the law and facts applicable to this case, and I am satisfied that I have been effectively represented.

(DE 8-4 at 18 & DE 8-8 at 24). In the agreements Petitioner's counsel stated that he had advised Petitioner of the consequences of the pleas, and Petitioner swore he was "freely, voluntarily, knowingly and intelligently entering [his] plea(s)." (DE 8-4 at 19 & DE 8-8 at 25). The trial court affirmed Petitioner had been warned of the consequences of entering these guilty pleas, including the minimum and maximum punishment provided by law, and that Petitioner was voluntarily and knowingly entering the pleas. *Id.* Petitioner was sentenced to a term of ten years' imprisonment on the charge of unlawful possession of a firearm, and to a concurrent term of two years' imprisonment on the charge of aggravated assault. (DE 8-4 at 22 & DE 8-8 at 38).

Petitioner filed applications for a state writ of habeas corpus, challenging both of his convictions. (DE 8-4 at 25-44 & DE 8-8 at 41-62). Petitioner alleged the same claims asserted in his federal habeas petition in each of these actions. *Id.* Petitioner averred in his state habeas actions that,

had he known that because of his "aggravated 2 year sentence, my 10 year sentence would be treated 3(g) and I would have to complete 50% before becoming eligible for parole," he would not have signed the plea agreements. (DE 8-4 at 30-31 & DE 8-8 at 46-47).[1] Petitioner alleged that he was in a "weak state, mentally, physically, and emotionally" after several days of trial, and that he signed the plea agreements due to his depleted condition. (DE 8-4 at 31 & DE 8-8 at 47).

Petitioner's trial counsel filed an affidavit in his state habeas action, stating:

1. Mr. Boyd was not coerced by me or anyone else to enter a plea in these cases. What happened is that we went to trial to a jury and the jury was out for a longer than expected time deliberating. As we waited, the State's prosecutor approached me and made us an offer. I relayed the offer to my client and we discussed whether or not to accept it. He did not make a snap decision; he thought it over seriously knowing that we had no idea what the jury's verdict would be. It was his decision to go ahead and accept the offer although we did [make] an attempt to get the offered lowered at the last minute but the State would not come down any lower.

As we were in the process of filling out the paperwork required for entry of a plea, the judge requested our presence in the courtroom. The judge advised us that the jury had sent out a note that [] they had reached a verdict. The judge, in open court, then asked the defendant how he wished to proceed. Did he wish to hear the verdict or did he wish to forego the verdict and still proceed with a plea of guilty and accept the State's offer. The Defendant made a decision to go forward with the plea offer and not wait to hear the jury's verdict (the verdict was guilty on both charges.)[2]

---

[1] The offense of aggravated assault with a deadly weapon is a "3(g)" offense, meaning a defendant must serve one-half of his prison sentence before becoming eligible for parole, while the offense of unlawful possession of a firearm by a felon has a more liberal policy for parole eligibility. *See* Tex. Penal Code Ann. art. 42.12 & § 3(g)(a)(2). The record indicates that the sentence for aggravated assault was classified as a "3(g)" offense, while the sentence for illegal possession of a firearm was not. (DE 8-4 at 23 & DE 8-8 at 39). The Texas Department of Criminal Justice has calculated Petitioner's "Parole Eligibility Date" as June 26, 2017, and his "Projected Release Date" as December 3, 2020, and his "Maximum Sentence Date" as June 26, 2025. (DE 8-2 at 1 & DE 8-6 at 1).

[2] The jury's verdict of guilty on the charge of unlawful possession of a firearm by a felon is at Docket Entry 8-8 at 33. The record does not indicate what the jury determined with regard to the charge of aggravated assault.

2. During the pendency of these cases, the State prosecutor had made us a number of offers starting with an offer of eight (8) years TDCJ on both charges. I discussed each and every offer with the client as required and he rejected each and every one of them even though he had advised me from the beginning that he was willing to accept plead (sic) to the charge of felon in possession of a firearm for something close to the minimum of two years or state jail time.

We were able to secure a final offer before trial for two years in TDCJ on the charge of Felon In Possession of a Firearm with DISMISSAL of the Aggravated Assault charge. However, Boyd refused to accept that offer and countered with 14 months State Jail time which the State would not agree to.

3. Boyd's claim that I told him I "had no idea" what would make a charge a "3(g)" offense is simply not true. I have always known that any finding of a Deadly Weapon will convert a charge into a 3(g) offense and would have told him when he asked. There is no way that I would have said I did not know. In fact we had discussed at length the possibility per the State's Notice of Intent to ask for a finding of a Habitual Criminal due to his juvenile record which if proven would have exposed him to a minimum of 25 years in TDCJ. I had told him that it was still up to the judge whether or not to allow that to happen but the State was noticing us that that was the intent on their part. I was very concerned with that because I could not guarantee him that the court would not allow it. As it turned out, just before we started the trial the court made known that it did not feel that such enhancement was appropriate given Boyd's juvenile record.

4. With regard to the suppression of a "confession", there was no "confession" per se. What was involved was a situation in which the police wanted to find the gun that Boyd supposedly had the night in question. They did ask[] him where it might be and the evidence and testimony was to the effect that the defendant "indicated" by gestures or otherwise where the gun might be. He never told them where it was so there was no verbal communication to suppress. Finally, as I recall, from the beginning Boyd had indicated to me that he volunteered the whereabouts of the gun on his own without being questioned because he wanted to avoid any possibility of getting hurt by the police given the circumstances. It was always my understanding that his actions were of his own free will, and never did he indicate that he had been forced to reveal the location.

5. My recollection is that I and Boyd went over the offense report at the jail long before the trial and we reviewed the information the witnesses were supposedly going to offer at trial. There was a request made to the State for any surveillance tapes and the State advised us there was none. We timely filed a request under 39.14 for disclosure by the State of all the evidence the State had in the case. The facts of the case were not that complicated and I know Boyd and I went over them in detail

at the jail. However, I would like to have it noted that he did refuse to speak to me on at least one of the jail visits and walked out on another occasion before I could go into any matters pertinent to his case.

6. The State did bring out the fact that Boyd had prior felony convictions, but that occurred while he was on the stand. When the defendant chooses to testify the State is permitted to bring out the fact of prior felony convictions at the guilt/innocence phase of the trial.

7. While true that the State took photos of defendant's tattoos, they were not used during the trial. And as to the comments by the State at argument or elsewhere, any objections were addressed by the judge and I do not know that they would constitute a violation of his right to trial by an impartial jury. That would be more properly an issue for appeal.

8. Defendant related to me from day one that he had gone to Sixth Street in downtown Austin on the night in question with some friends. When they went into one of the clubs, the defendant and one other person in the party were not allowed due to dress code violations into the club. Defendant and the other person proceeded across the street into another club. Boyd was not sure but thought that maybe the other person had seen what transpired between the defendant and the bartender inside the bar. However, Boyd did not know the name or location of the other person as they had just met for the first time the same night when he got[] together with his other friends. It is true that we did not get an investigator on the case until late in the case but part of the reason for that was that Boyd kept saying he would secure for me the name and phone number of one or more of the friends in the party who might know where to locate the unknown person that went into the bar with defendant on the night in question. When he did provide us with a name and phone number of one of the people that had been in the party, we did contact that person but all he could give us was the first name and a phone number of the unknown person. The investigator tried to contact that individual but never was able to make contact and could not find out the surname of the individual.

9. Boyd's request to have me removed from the case as his attorney was presented to the judge in open court in his presence. He was asked by the court to give reasons for the request and he stated to the court that he did not feel I was acting in his best interests and wanted someone else. The Court denied his request then and subsequently as he did keep sending pro se motions for my removal from the case. What he saw as frustration or anger on my behalf was more likely a reaction to his telling me that he would accept an offer to the charge of felon in possession and then when we were able to secure such an offer he changed his position and demanded either probation or state jail time or county time on a misdemeanor. Given the nature of the charges in the case and the facts I honestly felt there was no way the State

7

would agree to probation and I did tell him that. In fact I did make such an offer but was immediately rejected by the State. I felt that the offer for the minimum of two years for the felon in possession with DISMISSAL of the Aggravated Assault charge was the best we could get and urged him to accept it. His position was that he knew of others in jail with worse cases getting county jail time simply by "waiting out" the State. I told him while that might be true on some cases I was not getting the feeling that would happen in his case. If Boyd felt he was "backed into a corner" I would suggest it was due to his insistence on getting what he wanted regardless of what was offered.

(DE 8-4 at 47-50 & DE 8-8 at 65-68).

The Texas Court of Criminal Appeals denied the applications for state habeas relief without written order. (DE 8-1 (*Ex Parte Boyd*, WR-85,137-01) & DE 8-5 (*Ex Parte Boyd*, WR-85,137-02)).

## C.    Petitioner's Federal Habeas Claims

Petitioner alleges that he is entitled to habeas relief because:

1.    His conviction was obtained by a plea of guilt which was not knowing and voluntary;

2.    His conviction was secured by a confession that was illegally obtained and his right against self-incrimination was violated by the use of the confession;

3.    The prosecution suppressed exculpatory evidence;

4.    The prosecution wrongfully introduced evidence of prior convictions during the guilt/innocence phase of his trial;

5.    He was denied his right to an impartial jury;

6.    He was denied his right to compulsory service on a witness; and

7.    He was denied his right to the effective assistance of counsel.

Petitioner argues he is innocent of the crime of aggravated assault, but does not assert his "actual innocence" of the charge of being a felon in possession of a firearm. Pet. (DE 1) at 9. In his habeas petition he seeks relief in the form of dismissal of the conviction for aggravated assault and a

reduction in his sentence for the crime of possession of a firearm. *Id.* Respondent allows the petition

is timely and that Petitioner has exhausted his state court remedies. Response (DE 7) at 3.

## ANALYSIS

**A.**     **The Antiterrorism and Effective Death Penalty Act of 1996**

The Supreme Court summarized the basic principles established by the Court's many cases

interpreting the 1996 Antiterrorism and Effective Death Penalty Act in *Harrington v. Richter*, 562

U.S. 86, 97–100 (2011). The Supreme Court noted that the starting point for any federal court

reviewing a state conviction is 28 U.S.C. § 2254, which states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> (1)     resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the
> State court proceeding.

28 U.S.C. § 2254(d). The Court stated that "[b]y its terms § 2254(d) bars relitigation of any claim

'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)."

*Harrington*, 562 U.S. at 98.

One of the issues *Harrington* resolved was "whether § 2254(d) applies when a state court's

order is unaccompanied by an opinion explaining the reasons relief has been denied." *Id.* The

deference due to a state court decision under § 2554(d) "does not require that there be an opinion

from the state court explaining the state court's reasoning." *Id.* (citations omitted). The Supreme

Court reaffirmed that "a state court need not cite nor even be aware of our cases under § 2254(d)" for its opinion to be entitled to deference. *Id., citing Early v. Packer*, 537 U.S. 3, 8 (2002). When a state court decision denying relief is unexplained, the habeas petitioner's burden is to show there was "no reasonable basis for the state court to deny relief." *Id.* And even when a state court fails to specify which of the elements in a multi-part claim it found insufficient to warrant relief, deference is still due to that decision, because "§ 2254(d) applies when a 'claim,' not a component of one, has been adjudicated." *Id.*

Section 2254(d) permits the granting of federal habeas relief in only three circumstances: (1) when the state court's decision "was contrary to" federal law as clearly established by the holdings of the Supreme Court; (2) when the state court's decision involved an "unreasonable application" of such law; or (3) when the decision "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* at 100, *citing* 28 U.S.C. § 2254(d), *and Williams v. Taylor*, 529 U.S. 362, 412 (2000). The "contrary to" requirement refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions at the time of the relevant state court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Dowthitt v. Johnson*, 230 F.3d 733, 740 (5th Cir. 2000). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Thaler v. Haynes*, 559 U.S. 43, 47 (2010)*; Mitchell v. Esparza*, 540 U.S. 12, 10 (2003).

Under the unreasonable application clause of § 2254(d)(1), a federal court may grant the writ "if the state court identifies the correct governing legal principle from . . . [the Supreme Court's]

decisions but unreasonably applies that principle to the facts of the prisoner's case." *Dowthitt*, 230

F.3d at 741 (quotation and citation omitted).

> A state court's determination that a claim lacks merit precludes federal habeas relief
> so long as "fairminded jurists could disagree" on the correctness of the state court's
> decision. *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d
> 938 (2004). And as this Court has explained, "[E]valuating whether a rule application
> was unreasonable requires considering the rule's specificity. The more general the
> rule, the more leeway courts have in reaching outcomes in case-by-case
> determinations." *Ibid.* "[I]t is not an unreasonable application of clearly established
> Federal law for a state court to decline to apply a specific legal rule that has not been
> squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129
> S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

*Harrington*, 562 U.S. at 101.

> If this standard is difficult to meet, that is because it was meant to be. As amended
> by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court
> relitigation of claims already rejected in state proceedings. []. It preserves authority
> to issue the writ in cases where there is no possibility fairminded jurists could
> disagree that the state court's decision conflicts with this Court's precedents. It goes
> no further. Section 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not a substitute for
> ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n.5,
> 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).

*Id.* at 102-03 (some internal citations omitted). The Supreme Court, "time and again, has instructed

that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside,

erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated

in state court." *Grim v. Fisher*, 816 F.3d 296, 304 (5th Cir.) (internal quotations omitted), *cert.*

*denied*, 137 S. Ct. 211 (2016).

The provision of § 2254(d)(2) which allows the granting of federal habeas relief when the

state court made an unreasonable determination of the facts is limited by the next section of the

statute, § 2254(e). Section 2254(e)(1) requires a federal court to presume state court factual

determinations to be correct, although a petitioner can rebut the presumption by clear and convincing evidence. Absent a showing of clear and convincing evidence, the federal court must give deference to the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Ward v. Stephens*, 777 F.3d 250, 256 (5th Cir.), *cert. denied*, 136 S. Ct. 86 (2015). "The Supreme Court has clarified that when a claim is adjudicated on the merits, for the purposes of review under § 2254(d)(1), the record is limited to the one before the state court, even if the state court issued a summary affirmance." *Hoffman v. Cain*, 752 F.3d 430, 437 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1160 (2015).

This standard of review applies to Petitioner's federal habeas claims notwithstanding the fact that the Texas Court of Criminal Appeals' decisions denying relief in Petitioner's state habeas actions were unexplained. Although the state court did not make explicit findings, that does not mean the court "merely arrived at a legal conclusion" unworthy of the presumption of correctness. *Cantu v. Collins*, 967 F.2d 1006, 1015 (5th Cir. 1992), *citing Marshall v. Lonberger*, 459 U.S. 422, 433-34 (1983). If a state court summarily denies a petitioner's claim, the Court's authority under AEDPA is limited to determining the reasonableness of the ultimate decision. *Charles v. Thaler*, 629 F.3d 494, 498-09 (5th Cir. 2011); *Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002). When state habeas relief is denied without an opinion, the Court must assume that the state court applied the proper "clearly established Federal law," and then determine whether the state court decision was "contrary to" or "an objectively unreasonable application of" that law. *Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003).

## B.     Knowing and Voluntary Guilty Plea

Petitioner asserts that, while the jury was deliberating,

. . . Petitioner was negotiating plea bargains with the D.A. by way of his attorney. The

> last offer by the D.A. was relayed to the Petitioner approximately 10 minutes before he was notified that the jury had reached a verdict. After being coerced, in a state of duress, by his lawyer, and being under stress due to hunger, lack of sleep, and anxiety, the Petitioner agreed to take the final offer.

Reply (DE 9) at 7. In an action seeking a federal writ of habeas corpus, whether a guilty plea was voluntary is a question of federal law, and not a question of fact subject to the requirements of 28 U.S.C. § 2254(d). *Marshall*, 459 U.S. at 431-32 (holding that the voluntariness of a state prisoner's guilty plea is a question of law but that the historical facts underlying the entry of the plea are entitled to presumption of correctness). Accordingly, under the applicable standard of review, the Court must deny habeas relief on this claim unless the state court's decision denying the claim was an unreasonable application of Supreme Court precedent or involved an unreasonable determination of the facts in light of the record before the state court. Petitioner is not entitled to habeas relief because the state court's application of Supreme Court precedent to the facts of this case was not objectively unreasonable.

The well-established federal law with regard to validity of a guilty plea is that set forth in *North Carolina v. Alford*, 400 U.S. 25, 31 (1970): "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." A guilty plea may be challenged only on the grounds that it was made on the defective advice of counsel or that the defendant could not have understood the terms of his plea bargain. *Brady v. United States*, 397 U.S. 742, 755 (1970). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it," *id.* at 749, and may consider such factors as whether there was evidence of factual guilt. *Matthew v. Johnson*, 201 F.3d 353, 364-65 (5th Cir. 2000).

When a defendant is represented by counsel and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). If the advice of counsel falls below the minimum required by the Sixth Amendment, the guilty plea cannot have been made knowingly and voluntarily because it would not represent an informed waiver of the defendant's constitutional rights. *Mason v. Balcom*, 531 F.2d 717, 725 (5th Cir. 1976).

The record indicates that the advice of Petitioner's counsel was well within the range of competence demanded of attorneys in criminal cases. Petitioner allows, and his trial counsel avers, that Petitioner and counsel had numerous conversations about plea offers and the consequences of pleading guilty to the charges against him. Counsel avers that Petitioner declined to follow his advice and rejected a plea agreement providing for a two year term of imprisonment on the count of illegal possession of a firearm and the dismissal of the aggravated assault count, because Petitioner believed he could get a plea offer of probation or minimal jail time. As it happened, counsel's prediction that this belief was unrealistic proved correct. Accordingly, because counsel's representation was competent with regard to conveying and discussing plea offers, and communicating to Petitioner the consequences of rejecting or accepting those offers, Petitioner's guilty pleas may not be nullified based on the allegation that he was not provided with the advice of competent counsel. *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983); *Pollinzi v. Estelle*, 628 F.2d 417, 419 (5th Cir. 1980).

Because a guilty plea constitutes a waiver of constitutional rights, "it must be an intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *McMann*, 397 U.S. at 766. Although court records alone may be insufficient to establish a waiver of

fundamental constitutional rights if they are ambiguous, *Williford v. Estelle*, 672 F.2d 552, 554 (5th Cir. 1982), the record in this case does not suffer from ambiguity. Petitioner's statements at the time of his plea, that he understood the charges against him and the consequences of his guilty pleas, are substantial and unambiguous evidence of the voluntary nature of his pleas. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). A defendant's avowals that he understands the nature of the charges against him and the nature of the constitutional rights he is waiving, and that his plea is freely and voluntarily made, create a presumption that his plea is valid. *Matthew*, 201 F.3d at 366; *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). And the written guilty plea forms signed by Petitioner are prima facie proof of the knowing and intelligent nature of his guilty plea. *Theriot v. Whitley*, 18 F.3d 311, 314 (5th Cir. 1994), *citing Bonvillain v. Blackburn*, 780 F.2d 1248, 1250 (5th Cir. 1986).

The record does not suggest that Petitioner pleaded guilty involuntarily or for some improperly coercive reason; by entering guilty pleas and removing the enhancements alleged in the indictment from consideration at sentencing, Petitioner reduced the high end of the applicable sentencing range from twenty years to ten years, a rational decision. *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010); *Uresti v. Lynaugh*, 821 F.2d 1099, 1101-02 (5th Cir. 1987). Petitioner makes only a conclusory allegation that his pleas were coerced. Petitioner alleges that he was stressed and anxious and ready to have his criminal proceedings concluded, yet at the time he entered his pleas he knew that a conclusion to the proceedings was imminent because he had been informed that the jury had reached a verdict, and he knew that guilty verdicts coupled with a finding of true on the enhancements stated in the indictments could result in the imposition of a sentence of twenty years' imprisonment.

Because Petitioner has not met his burden of establishing that his pleas were unknowing or involuntary, or that he was denied his right to competent counsel in the plea bargaining process, the state court's denial of this claim was not contrary to or an unreasonable application of United States Supreme Court precedent and Petitioner is not entitled to federal habeas relief on this claim.

**C.     Illegally Obtained Confession**

Petitioner alleges that, at the time of his arrest in the alley, when the police officers were questioning him about the location of the weapon he had allegedly brandished, he was not advised of his *Miranda* rights and, accordingly, his "confession" as to the location of the gun was coerced. Pet. (DE 1) at 6. Petitioner argues that the use of this information at trial violated his right to be free of self-incrimination.

Petitioner waived this claim of error by pleading guilty to the charges against him. When a guilty plea has been entered, all non-jurisdictional challenges to a conviction's constitutionality are forfeited. *McMann*, 397 U.S. at 767; *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). Petitioner forfeited any claim that his "confession" was illegally obtained by entering his guilty plea. *Tollett v. Henderson*, 411 U.S. 258, 266 (1973); *Rogers v. Maggio*, 714 F.2d 35, 38 (5th Cir. 1983). The United States Supreme Court has held that the entry of a guilty plea obviates any later claim that the defendant's privilege against self-incrimination was violated. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). Accordingly, the state court's denial of this claim was not contrary to or an unreasonable application of federal law, and Petitioner is not entitled to federal habeas relief on this claim.

**D.     Suppression of Exculpatory Evidence**

Petitioner asserts that the State had, or should have acquired, surveillance video from the bar, which he alleges would have supported his innocence on the aggravated assault charge. Petitioner

allows that his counsel informed him that "there was no surveillance available from the bar that night[.]" Pet. (DE 1) at 10.

A valid guilty plea bars habeas relief on claims related to the alleged violation of constitutional rights that arose prior to the entry of that plea. *Tollett*, 411 U.S. at 267. Petitioner's allegation that the State had surveillance video and did not provide it to the defense, if both broadly construed and taken as true, arguably states a claim that the prosecution violated the doctrine of *Brady v. Maryland*, 373 U.S. 83 (1963). The Supreme Court has not extended the *Brady* doctrine to proceedings in which the defendant enters a guilty plea. *Orman v. Cain*, 228 F.3d 616, 617 & 621 (5th Cir. 2000) (holding that, under AEDPA standards, it is "patently reasonable" for courts to decide not to extend *Brady* to guilty pleas); *Matthew*, 201 F.3d at 361-62. Accordingly, the state court's decision denying relief on this claim was not contrary to or an unreasonable application of federal law as established by the United States Supreme Court, and Petitioner is not entitled to federal habeas relief on this claim.

**E.    Admission of Prior Convictions**

Petitioner asserts that the State improperly introduced evidence of his prior convictions during the guilt/innocence phase of his trial, before Petitioner testified and the evidence could be properly admitted to impeach his testimony. Pet. (DE 1) at 7.

Because a conviction after a guilty plea rests on the defendant's admission that he committed the crimes of conviction and the plea is a waiver of the right to a trial, Petitioner's guilty pleas constituted a waiver of the right to contest the admissibility of any evidence the State offered against him, including his prior convictions. *McMann*, 397 U.S. at 767. Because the state court's decision

denying relief on this claim was not contrary to or an unreasonable application of federal law, Petitioner is not entitled to federal habeas relief on this claim.

## F.     Impartial Jury

Petitioner contends that the prosecution introduced inadmissible evidence of his tattoos to prove gang affiliation, depriving him of an impartial jury. Pet. (DE 1) at 8. A guilty plea waives, *inter alia*, the right to a trial by jury. *Boykin*, 395 U.S. at 244. Petitioner's guilty pleas constituted a waiver of his right to contest the admissibility of any evidence the State might have offered against him, including any evidence that he had tattoos. *McMann*, 397 U.S. at 767. Because Petitioner's guilty pleas were knowing and voluntary, the state court's denial of Petitioner's claim that he was denied his right to a fair jury trial was not clearly contrary to federal law.

## G.     Compulsory Service

Petitioner maintains that he gave his counsel the "names, numbers, and work addresses of 4 of the 5 people who were with me that night. No effort was made to locate them . . ." Pet. (DE 1) at 8. Petitioner contends that the failure to locate and subpoena these witnesses denied him his right to compulsory service on a witness.

A guilty plea waives the right to the compulsory attendance of witnesses. *Boykin*, 395 U.S. at 244. Because Petitioner's guilty pleas were knowing and voluntary, the state court's conclusion denying Petitioner's compulsory service claim was not clearly contrary to federal law.

## H.     Effective Assistance of Counsel

Petitioner argues he was denied his right to the effective assistance of counsel because he experienced an "extensive" "range of problems" with his trial counsel. Pet. (DE 1) at 9. Petitioner alleges that his counsel did not take notes during his meetings with Petitioner, *id.* at 10, "had a

negative attitude," *id.* at 11, and gave Petitioner bad advice with regard to his eligibility for probation. *Id.* Petitioner further asserts counsel's performance was deficient because he "never tried to find my witnesses or retrieve [surveillance] from Moose Knuckle as I had requested . . . failed to file the motion for discovery that I asked him to file," and failed to file a motion to quash the indictment. *Id.* Petitioner alleges that he was forced to file several motions pro se, "all of which were ignored or denied." *Id.* Petitioner asserts that he told his counsel "that I had never been read my rights during my arrest," and that counsel's response was that "it didn't matter." *Id.* Petitioner contends that counsel did not properly impeach witnesses with their prior statements. *Id.* at 12.

By voluntarily pleading guilty to an offense, a criminal defendant foregoes claims for relief based on all non-jurisdictional defects preceding the plea. *McMann*, 397 U.S. at 767; *Bradbury*, 658 F.2d at 1087. This includes claims for ineffective assistance of counsel, except those alleging that the ineffectiveness rendered the guilty plea involuntary. *Smith*, 711 F.2d at 682. Ineffective assistance of counsel claims in the context of the entry of a guilty plea are governed by the United States Supreme Court's opinion in *Hill v. Lockhart*, which adopted the *Strickland* test. 474 U.S. 52, 57-58 (1985). With regard to the application of the *Strickland* test when the defendant pleaded guilty, the Fifth Circuit Court of Appeals has advised that, even "where counsel has rendered totally ineffective assistance to a defendant entering a guilty plea, the conviction should be upheld if the plea was voluntary. In such a case there is no actual and substantial disadvantage to the defense." *DeVille*, 21 F.3d at 659.

With regard to the prejudice prong of the *Strickland* test, *Hill* requires that, to establish prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S.

at 58-59. "To evaluate whether a defendant who has pleaded guilty has been prejudiced by his counsel's deficient performance, i.e., whether he would not have pleaded guilty had his counsel not been deficient, we must evaluate what the outcome of a trial might have been." *del Toro v. Quarterman*, 498 F.3d 486, 490 (5th Cir. 2007).

Because Petitioner went to trial but accepted a plea offer prior to the jury returning a verdict, to be entitled to relief Petitioner must establish that, but for his counsel's performance, he would not have entered the plea agreement but instead would have allowed the jury to return a verdict and be sentenced accordingly. Petitioner has not made such a showing. The following facts support the state court's denial of relief on this claim and are not contradicted by the record: counsel did seek disclosure of any available surveillance video from the Moose Knuckle; counsel did hire a private investigator to attempt to locate the potential witnesses based on information provided by Petitioner; counsel's advice that the State would not offer a plea that allowed for probation or state jail time was not incorrect; and Petitioner's allegedly non-Mirandized "confession" was not coerced. At the time Petitioner accepted the plea agreement providing for a maximum ten years' imprisonment, the jury was about to deliver a verdict of guilty on the charge of possession of a firearm by a felon which, as enhanced by the prior convictions, would have resulted in a potential sentence of twenty years' imprisonment.

Had Petitioner not entered a guilty plea, Petitioner would have been found guilty of being a felon in possession of a firearm and aggravated assault. Had the enhancements been deemed true, Petitioner was exposed to a maximum sentence of twenty years' imprisonment. By pleading guilty and the State accordingly dismissing the enhancements, Petitioner received an aggregate sentence of ten years' imprisonment. As previously noted, counsel's advice with regard to the plea agreements

was reasonably competent. Counsel's advice to Petitioner, that the State would not offer a plea bargain providing for probation or a minimal sentence, was not erroneous or incompetent advice.

Because the state habeas court's determination that Petitioner was not denied his right to the effective assistance of counsel was not clearly contrary to or an unreasonable application of established Supreme Court precedent, Petitioner is not entitled to federal habeas relief on his claim of ineffective assistance of counsel.

## CONCLUSION

The Texas Court of Criminal Appeals' decision denying relief on the claims presented in Petitioner's federal habeas petition was not contrary to or an unreasonable application of federal law to those claims. Accordingly, Petitioner is not entitled to habeas relief .

## RECOMMENDATION

It is, therefore, recommended that Petitioner's Application for Writ of Habeas Corpus be **DENIED**.

## CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

<u>OBJECTIONS</u>

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153 (1985); *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED this 19th day of June, 2017.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE